**Josephine Ann GLASS, Plaintiff,**

v.

**BEMIS COMPANY, INC., Defendant.**

No. 8:95CV372.

United States District Court,
D. Nebraska.

April 10, 1998.

Josephine Ann Glass, Omaha, NE, pro se.

James N. Foster, Jr., Timothy O. Schranck, McMahon, Berger Law Firm, St. Louis, MO, for Bemis Co., Inc.

## MEMORANDUM OPINION AND ORDER

CAMBRIDGE, Chief Judge.

This matter is before the Court on Defendant's motion for summary judgment (filing 72). After carefully considering the pleadings, Defendant's brief and evidence,[1] and the case law, the Court finds that the motion should be granted.

## I. BACKGROUND

In her second amended complaint, Plaintiff appears to allege racial discrimination, retaliation, and hostile work environment claims

---

1. Plaintiff did not respond to the motion for summary judgment.

against her former employer. Plaintiff is an African–American female. She filed three complaints with the Equal Employment Opportunity Commission ("EEOC"). Charge No. 320922430 (the '430 charge) was filed September 15, 1992. In it, she alleged unlawful discrimination on the basis of race because two white employees were paid more for "light duty" work than she was. The company later paid Plaintiff the amount she would have received for her assigned position, so the EEOC dismissed the charge on March 30, 1994. Plaintiff did not file a lawsuit on this claim within 90 days thereafter, so her avenues of redress on the '430 charge are foreclosed.

Charge No. 320930764 (the '764 charge) was filed January 4, 1993. In it, Plaintiff alleged further racial discrimination and retaliation by the company for having filed the '430 charge. On May 16, 1995, the EEOC issued a Notice of Right to Sue on this claim at Plaintiff's request.

Charge No. 320931076 (the '076 charge) was filed March 19, 1993, apparently to amend the '764 charge by providing additional examples of instances of harassment and retaliation against her, based on her race and on her EEOC filings. The EEOC issued a Notice of Right to Sue on this claim on May 16, 1995, at Plaintiff's request.

On August 18, 1995, Plaintiff filed this action. After a number of reviews by the court and subsequent amendments by the plaintiff, the case proceeded on the second amended complaint (filing 10). Plaintiff alleges harassment by a fellow African–American employee, various disciplinary actions against her by white managers, and work assignments by a white supervisor in contravention of doctor's orders after Plaintiff suffered a work injury. Plaintiff's employment was terminated on September 14, 1993, because Bemis had no positions available for which Plaintiff was qualified based on her medical restrictions. Defendant now moves for summary judgment, arguing that Plaintiff's claims were not timely raised, are nothing more than vague and conclusory allegations, and are unsupported by the evidence.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). However, in cases alleging employment discrimination, "[s]ummary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991) (citing *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)). "Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson, supra*, 931 F.2d at 1244).

Nevertheless, a Title VII plaintiff cannot simply rely on the claims in her complaint to survive a motion for summary judgment. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(e). If the adverse party, here the plaintiff, fails to do so, summary judgment shall be entered against her if appropriate. *Id.*

## III. ANALYSIS

### A. Timeliness of filing

Defendant argues that Plaintiff's lawsuit is untimely because it was filed 94 days after the Notices of Right to Sue were issued for the '764 and '076 charges. The 90–day period is calculated from the date the plaintiff receives the notice. Plaintiff testified in her deposition that she received the notice "on or

about May 16, 1995." She has provided no evidence as to date of receipt, but given that the notices were issued by the Denver, Colorado, EEOC office, one could presume the notices were mailed to Plaintiff and that she did not receive them on the same day they were issued. If the notices were sent by mail, the federal rules of procedure add three days to the prescribed time period. Fed. R.Civ.P. 6(e). *See Brooks v. Ferguson–Florissant School Dist.*, 113 F.3d 903, 904 (8th Cir.1997).

■ This does not cure the alleged defect, however, because even if Plaintiff received the notices on May 19, August 18 was still 91 days later. Nevertheless, the statutory time period for filing suit is not a jurisdictional prerequisite and is subject to equitable tolling in appropriate circumstances. *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir.1989). While Plaintiff has shown no cause for tolling the time limit, the Court in its discretion will deem the action timely filed for purposes of this motion in order to address the merits of the case.

## B. Race discrimination[2]

■ A "mixed motives" case arises when an employment decision was "the product of a mixture of legitimate and illegitimate motives." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). A mixed motives analysis requires the plaintiff to meet the threshold burden of showing that an illegitimate criterion was a motivating factor in the employer's decision to terminate her employment. If the plaintiff makes this showing, the burden then shifts to the employer to show that it would have terminated the employee even without the illegitimate criterion. *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 471 (8th Cir.1995) (citing *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444 (8th Cir.1993)).

> To make the threshold showing of illegitimate criterion and shift the burden to the employer, plaintiff must present "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the

alleged discriminatory attitude ... sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision [to terminate]." [*Radabaugh*,] 997 F.2d at 449 (quoting *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992)). This evidence may be direct or circumstantial, but if it is circumstantial, it must be "tied directly to the alleged discriminatory animus." *Ostrowski*, 968 F.2d at 182. Thus, statements by nondecisionmakers are insufficient to meet plaintiff's threshold burden, as are stray remarks in the workplace by those not involved in the decisionmaking process. *Radabaugh*, 997 F.2d at 449.

*Cram v. Lamson & Sessions Co.*, 49 F.3d at 471.

In the present case, Plaintiff has provided no evidence reflecting a discriminatory attitude on the part of the employer's decisionmakers which would have been a motivating factor in the company's decision to terminate her employment. She has testified that Amherst Williams, whom she has accused of making harassing and discriminatory comments, was not a member of the management team. Therefore, any statements attributed to him are irrelevant to a mixed-motives analysis because he was not a company decision-maker.

To the extent that Plaintiff's complaint can be read to allege discriminatory conduct and statements by white supervisors and managers at the company, there is evidence indicating that Bemis had a legitimate reason for the action taken against Plaintiff. Plaintiff was repeatedly warned that her behavior and actions were disruptive to her co-workers, and the company attempted to resolve the problems in a less drastic fashion. *See* the documents and letters attached to Plaintiff's second amended complaint (filing 10).

Thus, it does not appear that Plaintiff can establish an illegitimate criterion as the motivating factor in the employer's decision regarding her employment. When a plaintiff fails to meet the "illegitimate criterion"

---

**2.** The elements of a Title VII disparate treatment claim and a 42 U.S.C. § 1981 claim are identical.

*Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir.1997).

threshold, the analysis proceeds as a pretext case, where either a legitimate or an illegitimate set of considerations led to the challenged decision. *Price Waterhouse v. Hopkins,* 490 U.S. at 247, 109 S.Ct. 1775. Under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), line of cases, a plaintiff claiming discriminatory treatment is required to establish a *prima facie* case adequate to permit an inference of discrimination. The onus then shifts to the defendant to produce evidence sufficient to rebut the *prima facie* case by showing legitimate non-discriminatory reasons for termination. Plaintiff must then demonstrate that Defendant's explanation is pretextual and that the decision was motivated by intentional discrimination.

The Supreme Court in *St. Mary's Honor Center* explains the "issues of fact" inquiry thusly:

> At the close of the defendant's case, the court is asked to decide whether an issue of fact remains for the trier of fact to determine. None does if, on the evidence presented, (1) any rational person would have to find the existence of facts constituting a prima facie case, and (2) the defendant has failed to meet its burden of production—*i.e.,* has failed to introduce evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action. In that event, the court must award judgment to the plaintiff as a matter of law.... If the defendant has failed to sustain its burden but reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact *does* remain, which the trier of fact will be called upon to answer.
>
> If, on the other hand, the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant.... The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture.... The defendant's "production" (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved "that the defendant intentionally discriminated against [her]...."

509 U.S. at 509–11, 113 S.Ct. 2742 (emphasis in original) (citations and footnote omitted).

■ With that said, this Court must first determine whether Plaintiff has presented a *prima facie* case. To make out a *prima facie* case of race discrimination, Plaintiff generally must show four elements: (1) membership in a protected class; (2) appropriate qualifications for the position she held; (3) termination of her employment; and (4) that her termination occurred under circumstances which create an inference of unlawful discrimination. *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308 (8th Cir.1994); *Walker v. St. Anthony's Med. Ctr.,* 881 F.2d 554, 558 (8th Cir.1989).

■ Here, Plaintiff is an African–American female and therefore a member of a protected class. There is no evidence that she was not qualified for the position she held before she was injured. However, she has provided no evidence as to her qualifications for any job with Bemis after her injury. The company claims it had no position for her based on her limitations after her injury, and Plaintiff does not dispute that. As to the third and fourth elements, Plaintiff obviously was terminated from the company, but she has provided no evidence which creates an inference of unlawful discrimination. Clearly, the plaintiff has failed to state a *prima facie* case of race discrimination.

Federal courts are not vested with authority to sit as "super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir.1995); *Walker v. AT & T Tech.,* 995 F.2d 846 (8th Cir.1993) (Employer entitled to jury instruction that employer may exercise business judgment in making personnel decisions, so long as such decisions are made in

nondiscriminatory manner); *Slathar v. Sather Trucking Corp.,* 78 F.3d 415, 418 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 179, 136 L.Ed.2d 118 (1996) (same); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1317 (8th Cir.1996) (Court may not second-guess employer's personnel decisions unless such decisions are based on unlawful discrimination).

Most significantly, however, as described in detail above, it is clear the plaintiff has not presented sufficient evidence to allow a reasonable trier of fact to infer that intentional discrimination was the actual reason for her termination. This failure to create a genuine issue of material fact as to whether Bemis intentionally discriminated against Plaintiff dooms Plaintiff's disparate treatment claim and requires the entry of summary judgment in favor of the defendant on the race discrimination allegations in Plaintiff's complaint.

## C. Retaliation

Title VII prohibits an employer from discriminating against employees who oppose an unlawful employment practice. 42 U.S.C. § 2000e–3(a). Plaintiff alleges that her termination was in retaliation for filing EEOC charges about racial discrimination.

For retaliation cases, a burden-shifting framework similar to that of *McDonnell Douglas Corp. v. Green, supra,* is appropriate. The plaintiff has the initial burden of establishing a *prima facie* case of retaliatory discharge by demonstrating: (1) engagement in a protected activity; (2) Defendant's awareness of Plaintiff's engagement in the protected activity; (3) Plaintiff's subsequent discharge; and (4) that the discharge following the protected activity so closely in time as to justify an inference of retaliatory motive. *Carroll v. U.S. Dept. of Labor,* 78 F.3d 352, 356 (8th Cir.1996) (citing *Couty v. Dole,* 886 F.2d 147, 148 (8th Cir.1989) (a whistleblower case)). Another way of stating essentially the same test is: (1) Plaintiff engaged in statutorily protected participation in the Title VII process; (2) the defendant took adverse employment action against the plaintiff; and (3) the adverse action was causally connected to the participation in the protect-ed activity. *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 496–97 (8th Cir.1995).

Here, Plaintiff easily can meet the first three *Couty* elements, or the first two *West* elements, depending on which case one chooses to apply. Plaintiff's protected activity was her EEOC charge about discrimination. Bemis knows or should know that such a complaint is protected by Title VII. Bemis terminated Plaintiff's employment. The final element is more difficult for Plaintiff to prove, but for the sake of this analysis, I will assume she has established a causal connection between her complaint and her termination and has made out a *prima facie* case of retaliatory discharge.

The burden then shifts to Defendant to articulate a legitimate non-discriminatory reason for firing the plaintiff. Again, as discussed above, Defendant terminated Plaintiff's employment because it did not have a position for which she was qualified. This, on its face, is legitimate and non-discriminatory.

Therefore, to prevail the plaintiff must prove that the company's reason is a mere pretext for illegal retaliation. However, Plaintiff presents no evidence on the retaliation issue, and shows at most a "mere temporal connection" between her EEOC complaint and her termination. *Stevens v. St. Louis Univ. Med. Ctr.,* 97 F.3d 268, 272 (8th Cir.1996). Even assuming that the passage of six months between the complaint and the termination is sufficiently close in time to justify a possible connection, the inference to be drawn from the proximity in time is insufficient to prove pretext and to satisfy the third part of the *McDonnell Douglas* test. *Id.*

For that reason, summary judgment will be granted in favor of Defendant on Plaintiff's retaliation claim as well.

## D. Hostile work environment

Title VII also protects employees from having to work in racially hostile or abusive environments. The legal analysis of a hostile work environment claim has two elements, however, requiring the plaintiff to demonstrate both an objectively hostile envi-

ronment and a subjective perception of an abusive or hostile environment. *Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 354 (8th Cir.1997). "The conduct complained of must have been 'severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—' if the plaintiff is to succeed." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Also, the employee must subjectively perceive the environment as abusive or the conduct complained of "cannot be said to have 'actually altered the conditions of the victim's employment, and there is no Title VII violation.' " *Id.* (quoting *Harris*, at 21–22, 114 S.Ct. 367).

 Plaintiff has offered no evidence to support her burden of proof on this issue. In her complaint, she alleges that racially harassing remarks were made to and about her by an African–American co-worker. This certainly does not give rise to a finding of workplace hostility due to Plaintiff's race. Moreover, "Title VII . . . is not necessarily violated by a few isolated racial slurs." *Powell v. Missouri State Highway & Transp. Dept.*, 822 F.2d 798, 801 (8th Cir.1987). Plaintiff makes no claims of discriminatory conduct or statements by her supervisors which could create a pervasively hostile atmosphere. *See Erebia v. Chrysler Plastic Prods. Corp.*, 772 F.2d 1250, 1260 (6th Cir. 1985) ("Racial harassment directed at an employee by a single supervisor can sufficiently poison the employee's working atmosphere, since a supervisor can dominate the workplace with respect to his subordinate.") (Kennedy, J., dissenting), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986).

Plaintiff has not shown either an objectively or subjectively hostile working environment. As she has failed to support her claims of a hostile work environment, summary judgment will be granted in Defendant's favor on this issue.

**E. Disability**

As an initial matter, the defendant argues that Plaintiff failed to exhaust her administrative remedies on this issue because she failed to file an NEOC or EEOC charge on this claim.

 "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. . . ." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir.1994) (quoting *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 863 (7th Cir .1985)). In the *Williams* case, the court made clear that it disapproves of ambush litigation, holding that the plaintiff's racial discrimination claim was precluded because her EEOC charge did "not even hint" of a claim of race discrimination. 21 F.3d at 223. However, a plaintiff whose EEOC charge may not technically contain a certain claim may still be found to have administratively exhausted her claims if the claims in her complaint are "like or reasonably related" to the charges brought before the EEOC. *Williams*, 21 F.3d at 222.

In the present case, Plaintiff's EEOC charges appear to have been filed before she suffered her disabling injury. She did not file any subsequent charges or amendments to include the alleged discrimination due to her disability. Defendant therefore is correct that Plaintiff has failed to exhaust her administrative remedies on this issue, and summary judgment will be granted in Defendant's favor as to any claims regarding Plaintiff's disability.

## IV. CONCLUSION

Because Plaintiff has failed to show that Bemis Company's reasons for her termination are pretextual and that the decision to fire her was motivated by intentional discrimination, summary judgment in favor of the defendant should be granted on all of her claims.

IT IS ORDERED:

1. Defendant's motion for summary judgment (filing 72) is granted as to each of Plaintiff's claims; and

2. Separate judgment will be entered dismissing this case.